**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SALIFOU YONLI,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1883-PRW** |
| | ) | |
| **WARDEN, DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Salifou Yonli, a noncitizen[1] and Burkinabe national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Patrick R. Wyrick referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). The undersigned set a briefing schedule, Doc. 5, and the Petition is at issue. For the reasons below, the undersigned recommends that the Court deny the Petition.

## I. Background

Petitioner, a citizen of Burkina Faso, entered the United States on or about February 24, 2015, as a nonimmigrant with authorization to remain in the United States for a temporary period not to exceed August 23, 2015. Resp. at 2; Doc. 8-1 at 1 (Notice to

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Appear). On August 11, 2015, Petitioner applied for asylum, and the application was pending when he filed his Petition. Resp. at 2. On April 26, 2018, ICE initiated removal proceedings against him by filing a Notice to Appear with the Immigration Court, charging him as removable under 8 U.S.C. § 1227(a)(1)(B) in that, after admission as a nonimmigrant, he remained in the United States longer than permitted. Doc. 8-1 at 1.

On January 27, 2025, law enforcement officers in New York arrested Petitioner for driving while intoxicated. Resp. at 2. He pleaded guilty on May 1, 2025, to Driving While Ability Impaired by the Consumption of Alcohol, and he was ordered to pay a $300 fine. *Id*. at 2-3; Doc. 8-2 at 1 (I-213). On December 6, 2025, ICE arrested Petitioner in Newark, New Jersey. Resp. at 3; Doc. 8-2 at 3; Doc. 8-3 (I-200 Warrant). ICE detained him under 8 U.S.C. § 1226(a). Resp. at 4; Doc. 8-4 (I-286 Notice of Custody Determination).

While in ICE custody on December 6, 2025, Petitioner initially declined to indicate whether he wanted a bond hearing before an Immigration Judge ("IJ"). Doc. 8-4. He later requested a bond hearing and twice requested—on April 3, 2026, and June 5, 2026—to continue that bond hearing. Doc. 8-5 at 1 (April 3, 2026 IJ Order continuing hearing); Doc. 8-6 (June 5, 2026 IJ Order continuing hearing). On July 10, 2026, an IJ held a custody redetermination hearing for Petitioner and "after full consideration of the evidence presented," the IJ denied the request for bond and found Petitioner "did not establish" he was "not a flight risk." Doc. 8-7 (July 10, 2026 IJ order denying bond).[2] He did not appeal

[2] The IJ orders for the continuances and the bond hearing indicate Petitioner had counsel for those proceedings. Doc. 8-5 at 1 (listing counsel in New York, New York); Doc. 8-6 at 1 (same); Doc. 8-7 at 1 (same).

the IJ's order to the Board of Immigration Appeals ("BIA"). Resp. at 3; Reply at 2 (alleging "improper guidance" from counsel to explain why he did not appeal).

On September 8, 2026, an IJ ordered Petitioner removed from the United States. S*ee* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/caseInformation (last visited Oct. 23, 2026). He timely appealed the IJ's removal order to the BIA. *Id*. His appeal remains pending. *Id*.

On July 23, 2026, Petitioner filed his Petition before the Court. Pet. at 1. When he filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. *Id*. at 1. Petitioner remains detained there. *See* ICE Online Detainee Locator, *at* https://locator.ice.gov/odls/#/results (last visited Oct. 23, 2026).

## II. Petitioner's Claims

Petitioner asserts two claims. He first alleges his detention without a hearing violates the Fifth Amendment's Due Process Clause "because the government has not provided any mechanism for individualized custody determination or review." Pet. at 9. Petitioner next claims his "prolonged detention" without a bond hearing violates his due process rights and the principles of *Mathews v. Eldridge*, 424 U.S. 319 (1976). Pet. at 10. He seeks "immediate release from ICE custody" or "a proper bond hearing." *Id*. at 12.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through

habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Petitioner need not exhaust all administrative remedies before filing his Petition.

It is undisputed Petitioner is detained in ICE custody under 8 U.S.C. § 1226(a). Resp. at 3; Doc. 8-4; Doc. 8-5; Doc. 8-6; Doc. 8-7; Reply at 2. "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.(d)(1), 1236.1(d)(1)). A noncitizen may appeal to the BIA an IJ's decision from a bond hearing under § 1226(a). 8 C.F.R. § 236.1(d)(3). He may also seek a custody redetermination any time if he can demonstrate their circumstances materially changed. *Id*. § 1003.19(e).

Petitioner did not appeal the IJ's order denying his bond after a hearing under § 1226(a). Respondents argue this failure bars him from filing the present Petition. Resp. at 6-7. Based on prior decisions in this District and the text of § 1226(a), however, Petitioner need not exhaust all available administrative remedies before filing a habeas petition before the Court.

While generally "the exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief[,] . . . the statute itself does not expressly contain such a requirement." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (citation modified). "Challenges to immigration detention are properly brought through habeas. And the exhaustion deficiencies [the Tenth Circuit has] noted in other respects do not affect habeas

jurisdiction over such claims." *Soberanes*, 388 F.3d at 1310 (citing *Zadvydas*, 533 U.S. at 687-88). "Exhaustion is typically nonjurisdictional," and courts "treat a rule as jurisdictional only if Congress clearly states that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416-17 (2023) (citation modified). "When Congress has not clearly required exhaustion," making it nonjurisdictional, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). Further, the statutory language of § 1226(a) does not expressly contain an exhaustion requirement.

Judge DeGiusti concluded in two recent habeas cases that immigration detainees do not have to exhaust administrative remedies before filing a habeas petition. *See Bangemu v. Gantt*, No. CIV-815-D, 2026 WL 2323601, at *3 (W.D. Okla. July 30, 2026) (R&R) (recommending that a petitioner not be required to exhaust administrative remedies by first appealing an IJ's order denying bond, when raising a due-process challenge to prolonged detention under § 1226(a)), *adopted*, 2026 WL 2329865 (W.D. Okla. Aug. 11, 2026); *Miranda v. Mullin*, No. CIV-26-1004-D, 2026 WL 2390961, at *1 (W.D. Okla. Aug. 17, 2026) (ruling an immigration detainee "is not required to request a bond redetermination hearing before filing his Petition"). Other judges in the circuit have also found exhaustion unnecessary for noncitizens challenging detention under § 1226(a). *See Repela v. ICE Field Off. Dir.*, No. 26-CV-00552, 2026 WL 776123, at *2 (D. Colo. Mar. 19, 2026) ("[E]ven though a noncitizen detained pursuant to § 1226 may request a bond hearing, they are not required to do so before they can pursue § 2241 habeas relief."); *Salvador F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025) ("[Section] 1226 contains no clear rule that requires exhaustion of administrative remedies.").

Here, Petitioner's failure to exhaust his available administrative remedies—specifically, his failure to appeal the IJ's bond order to the BIA—does not bar him from seeking habeas relief. The Court should consider the merits of the Petition.

**B. The most Petitioner is entitled to is a bond hearing, but such a hearing already occurred.**

Petitioner seeks immediate release or "a proper bond hearing." Pet. at 11. Consistent with this Court's recent approach, the undersigned would typically recommend Petitioner be afforded a constitutionally sufficient, individualized bond hearing under § 1226(a). *See, e.g.*, *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026) (concluding "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a)"); *Morales Castellanos v. Grant*, No. CIV-25-1490-PRW, 2026 WL 2243981, at *1 (W.D. Okla. Aug. 4, 2026) (holding in accordance with *Santillan Quiroz* that a similarly situated petitioner is entitled to a bond hearing under § 1226(a)); *Kumar v. Mullin*, No. CIV-26-689-SLP, 2026 WL 1960943, at *2 (W.D. Okla. July 7, 2026) (concluding because § 1226(a) governs petitioner's detention, "he is entitled to an individualized bond hearing"). However, Petitioner has recently received a bond hearing. On July 10, 2026, an IJ denied Petitioner's request for bond "after full consideration of the evidence" after finding he "did not establish" he was "not a flight risk." Doc. 8-7 at 1 (citation modified).

This Court cannot review the IJ's discretionary determination to deny bond. The determination of bond under § 1226(a) is within the purview of the IJ, who considers whether a noncitizen is a flight risk or a danger to the community. 8 C.F.R. § 236.1(c).

Further, § 1226(e) "strips federal courts of jurisdiction to hear challenges to an IJ's discretionary decision to keep a noncitizen in detention." *Nucamendiz v. Hyde*, No. 25-CV-13851, 2026 WL 221449, at *1 (D. Mass. Jan. 28, 2026) (citation modified); *see also Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (citing § 1226(e) and noting "the Attorney General's exercise of discretion is not subject to judicial review"). "Thus, a district court has no jurisdiction to consider a habeas petitioner's challenge to the decision to either grant or deny bond." *Kumar v. De Anda-Ybarra*, No. CIV-26-164-R, 2026 WL 753944, at *2 (W.D. Okla. Mar. 17, 2026); *see also Perez v. Holt*, No. CIV-25-1151-SLP, 2026 WL 597126, at *6 (W.D. Okla. Mar. 3, 2026) ("Thus, the Court finds that the IJ relied on evidence in the record to make a discretionary decision to deny Petitioner bond; therefore, this Court lacks subject matter jurisdiction to review that decision.").

This Court lacks subject-matter jurisdiction to review the IJ's discretionary decision to deny Petitioner bond based on risk of flight. In the limited circumstances where Petitioner may be entitled to habeas relief from his bond hearing, he must show the IJ's decision had a constitutional defect or was legally erroneous. Section "1226(e) does not preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez Casallas v. Jone*s, No. CIV-26-53-J, 2026 WL 324646, at *2 (W.D. Okla. Feb. 6, 2026) (citation modified).

Petitioner has not established his bond hearing was constitutionally deficient. He alleges generally he did not receive a "proper bond hearing" and asks the Court to order a hearing where Respondents would have the burden to justify his detention. Pet. at 9. Petitioner also asserts the IJ "failed to conduct the required individualized meaningful

assessment of my custody status" and "rested his decision on a narrow and speculative basis." Reply at 2. Petitioner has not shown the process afforded him at the bond hearing was constitutionally inadequate. The IJ considered all evidence presented and made a factual finding that Petitioner "did not establish" he was "not a flight risk." Doc. 8-7 at 1. And Judges in this District have consistently declined to order or require burden shifting at an IJ's bond hearing. *See, e.g.*, *Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499, at *1 (W.D. Okla. July 21, 2026) (finding "the Fifth Amendment Due Process clause is not offended by leaving the burden of proof on the non-citizen in a § 1226(a) bond hearing"); *Guzman Morales v. Mullin*, No. CIV-26-587-SLP, 2026 WL 1962374, at *2 (W.D. Okla. July 7, 2026) (declining to address petitioner's burden-shifting claim). In sum, Petitioner "has not shown that the [IJ's] decision was somehow legally erroneous or unconstitutional," so "the Court lacks jurisdiction to reconsider the IJ's discretionary decision," *Kumar*, 2026 WL 753944, at *2 (citation modified), to deny bond.

**C. Petitioner's due process claim should be denied.**

"The Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation modified). Such protections apply to all noncitizens in the United States, whether their presence is "lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects." *Id*. at 690. Under these principles, civil immigration detention satisfies due process only in "certain special and narrow nonpunitive circumstances," and must "bear[] [a] reasonable relation to the

purpose" for which the noncitizen is detained. *Id*. (citation modified). For example, the Supreme Court has identified such purposes to mitigate the risk of danger to the community and to prevent the noncitizen's flight. *Id*. at 690-91; *see also Demore*, 538 U.S. at 527-28. A noncitizen's detention motivated by these purposes may still violate the Due Process Clause when the detention becomes unreasonably prolonged.[3]

Here, Petitioner not only challenges his initial bond hearing, Reply at 2-3, but also alleges more generally his "ongoing detention of over 11 months, with no reasonably foreseeable end in sight, is unconstitutionally excessive in relation to the Government's legitimate, non-punitive purpose of not giving me a proper bond hearing," *id*. at 4. He claims he is entitled to release or "a proper bond hearing," Pet. at 11, based on the three-factor *Mathews* framework. The undersigned liberally construes Petitioner's claims to allege a due process violation and to seek release or another bond hearing based on his prolonged detention and what he believes to be deficiencies in the July 2026 bond hearing.

Courts considering habeas petitions have often applied the *Mathews* framework to determine what constitutional process is required in immigration detention cases with more prolonged detention. This framework requires a court to analyze an individual's due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of*

[3] A noncitizen may claim their detention violates either their substantive or procedural due process, though Petitioner does not specify a basis here.

*Corr. v. Thompson*, 490 U.S. 454, 460 (1989). *See also, e.g., Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("In determining what procedures sufficiently protect due process in the immigration context, courts have applied the framework established in [*Mathews*]."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28-39 (1st Cir. 2021) (applying *Mathews* to determine whether a noncitizen detained under § 1226(a) is entitled to a bond hearing where the government bears the burden of proof).

The undersigned adopts the thoughtful reasoning of Judge Maxfield's Report and Recommendation in *Bangemu* and similarly analyzes Petitioner's due process claims under the three *Mathews* factors. *See Bangemu*, 2026 WL 2323601, at *4-*7 (R&R) (applying *Mathews* to analyze a due-process challenge to prolonged detention under § 1226(a) after an initial bond hearing), *adopted*, 2026 WL 2329865 (W.D. Okla. Aug. 11, 2026). In *Bangemu*, Judge DeGiusti adopted Judge Maxfield's recommendation to deny a petition for a situated petitioner who (1) had a prior bond hearing under § 1226(a) at the which the IJ denied bond and (2) filed a habeas petition after the bond hearing, alleging due process entitled him to another bond hearing based on his prolonged detention. 2026 WL 2329865, at *1. After applying the *Mathews* factors in a similar way to Petitioner's claims, the undersigned recommends denial of any habeas relief.

**1. Petitioner's private liberty interest weighs in his favor.**

The first *Mathews* factor is "the private interest that will be affected." 424 U.S. at 335. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see id*. ("A statute permitting indefinite detention of an alien

would raise a serious constitutional problem."). Indeed, "in our society liberty is the norm, and detention . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987) (citation modified). This liberty interest also applies to noncitizens, as "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690 (citation modified).

Respondents deprived Petitioner here of his freedom when they detained him in December 2025 and continue to detain him under § 1226(a) after a bond hearing. Put differently, while he remains in detention, his private interest in being free from imprisonment is at stake. Thus, the first *Mathews* factor favors procedures that carefully protect Petitioner's liberty interest. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1243 (D.N.M. 2025) ("This Court need not wait another six, twelve, or eighteen months to determine that the first *Mathews* factor weighs in Petitioner's favor. Petitioner's private interest in being free from detention – and unlawful detention at that – is at stake now."); *Requejo Roman*, 816 F. Supp. 3d at 1283 (finding the first *Mathews* factor favored a petitioner in ICE custody because his interest in being free from detention is 'the most elemental of liberty interests'") (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

**2. There is little or no risk of an erroneous deprivation of Petitioner's due process rights due to constitutionally sufficient procedures.**

The second *Mathews* factor is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. In *Jennings*, the Supreme Court held § 1226(a) does not confer a statutory right to periodic bond hearings, and the canon of constitutional

avoidance did not provide a basis for reading such a right into the statute. 583 U.S. at 297-303. The Court, though, ultimately left unresolved the constitutional question whether periodic bond hearings may be warranted under due process. *Id*. at 312-13.

Here, Petitioner's central claim—that detention under § 1226(a) is prolonged and due process requires an *additional* bond hearing—has divided courts of appeals. The First and Second Circuits answered that question in the affirmative on the records before them. *See Hernandez-Lara*, 10 F.4th at 30, 39-41 (holding § 1226(a) procedures invalid as applied to a noncitizen detained for ten months who had received a bond hearing one month into detention, and ordering a new hearing at which the government bore the burden to justify continued detention); *Velasco Lopez v. Decker*, 978 F.3d 842, 853-56 (2d Cir. 2020) (holding once § 1226(a) detention becomes "prolonged," a detainee is entitled to a new hearing at which the government bears the burden to justify continued detention).[4]

The Third and Ninth Circuits have rejected claims that prolonged detention under § 1226(a) entitles a petitioner to a second bond hearing as a matter of due process, while expressly reserving the possibility of relief upon a different record. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279-80 (3d Cir. 2018) (rejecting a detainee's claim "to compel a second bond hearing despite alleging no constitutional defect in the one he received," while recognizing "despite an initial bond hearing, detention under § 1226(a)

[4] Additional circumstances in *Velasco Lopez* warrant acknowledgment. The noncitizen's prolonged detention there was largely attributable to ICE delays to produce the detainee for his criminal proceedings. 978 F.3d at 852–53. Bond was then denied based on the very charges that ICE's own conduct had kept pending. *Id.* The risk of erroneous deprivation in that case was not theoretical; it was demonstrated on the record.

might become unreasonably prolonged, whether by virtue of government delay or some other cause," and declining to "decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing"); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203, 1213-14 (9th Cir. 2022) (holding the Due Process Clause does not entitle a detainee to "a second bond hearing at which the government bears the burden of proof," but declining to "foreclose all as-applied challenges to § 1226(a)'s procedures").

No court, though, has ruled that prolonged detention alone entitles a detainee to another bond hearing. *See, e.g.*, *Borbot*, 906 F.3d at 277 ("But Borbot cites no authority, and we can find none, to suggest that duration alone can sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations."); *Velasco Lopez*, 978 F.3d at 855 n.13 (declining "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden"); *Hernandez-Lara*, 10 F.4th at 30 n.4 (declining to determine when detention becomes sufficiently prolonged to require another hearing).

Petitioner stands in a position akin to the noncitizen in *Borbot*. He does not contend the initial bond hearing in July 2026 had any constitutional defects. He identifies no constitutional defects in the procedures used during the hearing, and the record evidence does not establish a risk of erroneous deprivation when the IJ denied Petitioner bond. Petitioner also fails to show additional procedures would diminish the risk of an erroneous deprivation of his due process rights. At most he alleges an additional hearing where the government holds the burden of proof would conform with due process. Pet. at 9-10. But regulations provide additional procedures to allow a noncitizen to appeal an adverse bond

decision and to request custody redetermination based on materially changed circumstances. 8 C.F.R. §§ 236.1(d)(3), 1003.19(e). Petitioner has received a constitutionally sufficient bond hearing, he has additional procedures available to appeal and to seek a second hearing, and he fails to cite any legal authority to support his position. The second *Mathews* factor weighs against him.

**3. The government's interest and administrative burden are substantial.**

The final *Mathews* factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents have no legitimate interest "in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854; *see also Demore*, 538 U.S. at 515 (noting the government has an interest in "protecting the public from dangerous criminal aliens."). Indeed, through detention, the government seeks to increase the chance that, if ordered removed, the noncitizens will be successfully removed. *Rodriguez Diaz*, 53 F.4th at 1208 (citing *Demore*, 538 U.S. at 528). Also, while the administrative burden of an additional hearing is "minimal," *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025), the Court must still consider whether additional procedure would meaningfully reduce the risk of an erroneous deprivation.

The government's interest in detaining Petitioner until removal is substantial. An IJ in July 2026 found Petitioner failed to establish he was not a flight risk. Doc. 8-7 at 1. Petitioner has not adequately explained how additional procedures would meaningfully

reduce the risk of error when an IJ already reviewed the record evidence to determine whether he is a flight risk and determined he is. His requested relief apparently is a second bond hearing with the burden on the government. However, for reasons discussed above, the procedures guaranteed by the regulations already seek to prevent any erroneous deprivation. Further, though not administratively final, Petitioner was ordered removed, and the government has a substantial interest in ensuring noncitizens who are ordered removed are removed. The third factor weights in Respondents' favor.

#### 4. Conclusion

In sum, the first *Mathews* factor favors Petitioner, and the second and third factors favor Respondents. Petitioner already received a constitutionally sufficient bond hearing. Because no court has adopted an explicit rule that requires a second or periodic bond hearing based solely on the length of detention, and Petitioner does not identify any constitutional inadequacies in his earlier bond hearing or relevant regulations, the Court should reject Petitioner's claim on the merits.

## V. Recommendation and Notice of Right to Object

For these reasons, the undersigned recommends that the Court **DENY** the Petition, Doc. 1, for habeas relief. The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **November 6, 2026.** *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **November 16, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right

to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 23rd day of October, 2026.

Chris M. Stephens

CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE